# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TYRONE STALLINGS,

Petitioner,

v.

MICHAEL GIERACH,

Respondent.

Case No. 22-CV-161-JPS

**ORDER**

## 1. INTRODUCTION

On January 9, 2023, Petitioner Tyrone Stallings ("Petitioner" or "Stallings") filed a corrected, amended petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2254 pursuant to the Court's order screening his original petition. ECF Nos. 7, 11. Respondent Michael Gierach ("Respondent"), *see infra* note 4, then moved to dismiss two of Petitioner's three grounds for relief. ECF No. 16. The Court granted in part and denied in part the motion, concluding that Petitioner's "*Brady* [*v. Maryland*, 373 U.S. 83 (1963) (hereinafter, "*Brady*"] claim and . . . Sixth Amendment [Confrontation Clause] claim"—Grounds Four and Seven, respectively—would proceed to merits briefing, while Ground One was dismissed with prejudice. ECF No. 25 at 35; ECF No. 13 at 1–2 (recounting remaining grounds for relief set forth in corrected, amended petition following screening of original petition and referring to those remaining grounds as "Ground One," "Ground Four," and "Ground Seven").

This case is now ripe for a merits analysis on those aforementioned claims. For the reasons discussed herein, the Court will deny the amended § 2254 petition and dismiss this case with prejudice.

## 2. BACKGROUND

### 2.1 The Facts Giving Rise to Petitioner's Criminal Case[1]

This petition arises out of Petitioner's conviction in Milwaukee County Circuit Court Case No. 2014CF002164.[2] Stallings was therein found guilty at trial of three offenses: (1) possession of a firearm by a felon, with a repeater modifier; (2) possession of a short-barreled shotgun/rifle, with a repeater modifier; and (3) possession with intent to deliver a controlled substance—in this case, THC—with second/subsequent offense and use of a dangerous weapon modifiers.

In May 2014, an officer of the Milwaukee Police Department ("MPD") applied for a no-knock warrant to search Stallings's alleged residence at 1134 S. 19th Street in Milwaukee (the "19th Street Residence") for items used in the commission of or constituting evidence of criminal activity, in particular (1) being a felon in possession of a firearm and (2) possession with intent to deliver cocaine. ECF No. 1-1 at 3.[3] The officer

---

[1]The following factual background is taken largely from the Court's order, ECF No. 25, on Respondent's motion to dismiss, ECF No. 16. For brevity, the Court omits citations to that order and internal citations from that order, with some exceptions. Citations are included in full for factual and procedural background new to this Order.

[2]*See State of Wisconsin v. Tyrone Stallings,* No. 2014CF002164 (Milwaukee Cnty. Cir. Ct. 2014), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2014CF002164&countyNo=40&index=0 (last visited Mar. 25, 2024) (hereinafter, "State Court Docket").

[3]Although Petitioner neglected to attach these exhibits to his amended petition at ECF No. 11, the Court nevertheless cites to and relies on those exhibits

submitted an affidavit in support of the warrant application, wherein he indicated that the application was "based upon information . . . derived from a reliable registered confidential informant ["CI"] . . . ."

According to the affidavit, the CI represented that he or she had been inside the 19th Street Residence and therein observed a firearm "belonging to an individual known to the [CI] only as 'TY,'" whom the CI believed was a convicted felon. The CI further stated that he or she "observed TY to engage in the distribution of cocaine" from the 19th Street Residence. When shown a booking photo of Stallings, the CI identified the person in the photo as the same "TY."

The officer independently corroborated Stallings's status as a felon. The officer also independently corroborated that Stallings listed the 19th Street Residence as his home address with the Wisconsin Department of Corrections. A court commissioner found that the affidavit established probable cause that evidence connected with a crime would be found at the 19th Street Residence and authorized the no-knock search warrant.

On May 20, 2014, MPD officers and agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") executed the warrant. *State v. Stallings*, No. 2018AP982-CRNM, 2021 WL 8534196, at *1 (Wis. Ct. App. Apr. 13, 2021). Officers found marijuana, marijuana paraphernalia, a sawed-off shotgun and shells, and mail addressed to Stallings at the 19th Street Residence.

Officers also thereafter observed Stallings leave the 19th Street Residence. MPD Officer Laura Captain ("Captain") initiated a traffic stop

---

as attached to the original petition, ECF No. 1, in determining the factual background underlying the petition.

of Stallings and arrested him. Stallings later testified that, while in the back of Captain's squad car, he stated: "I am going to need a lawyer." *Stallings*, 2021 WL 8534196, at *3. He also testified that he heard Captain tell other officers that Stallings had requested an attorney. After his arrest, Stallings was interviewed by other officers, during which time he admitted that the marijuana was his, that he had been selling it, and that he had recently bought the gun. *Id.* at *1.

### 2.2    Procedural Background

#### 2.2.1    Pre-Trial & Trial Stage

Stallings unsuccessfully moved to suppress the drugs and guns recovered in the search, arguing that the warrant application and supporting affidavit did not support a finding of probable cause. *Stallings*, 2021 WL 8534196, at *2. Later, Stallings filed a motion in limine challenging the admissibility of statements he made after allegedly invoking his right to an attorney in Captain's squad car. *Stallings*, 2021 WL 8534196, at *3. A hearing on the motion was held in September 2015. *Id.*; ECF No. 27-5.

Stallings testified at the hearing that he stated from the back of Captain's squad car, two or three times, that he was "going to need a lawyer" and that Captain responded "well, yeah, you going to need a damn good lawyer for what they found in your house . . . ." ECF No. 27-5 at 48, 65, 70. He also testified that he believed that the officers who later interrogated him "already knew" he had requested a lawyer because he believed Captain had told them. *Id*. at 63.

Captain testified that her squad car was equipped with a recording system that was activated when someone is in the backseat. At the close of Captain's testimony, defense counsel stated that she wanted to obtain and review the recording before proceeding. "The State told the trial court that,

having learned at the prior hearing about the possibility of some recording," the prosecutor inquired with MPD about the recording and "was told that any such recordings were retained for 120 days and then disposed of." *Stallings*, 2021 WL 8534196, at *3. Captain also testified that she "d[id]n't remember" whether Stallings asked for an attorney while in the back of her squad car. ECF No. 27-5 at 30. If he had done so, she testified that her normal practice would be to "notify the investigating officer of the request for a lawyer," which she did not recall having done. *Id.* at 33.

One of the officers who later interrogated Stallings also testified at the hearing. ECF No. 27-5 at 72. He testified that Captain never informed him that Stallings had requested a lawyer and that if she had, he would have documented it in his report. *Id.* at 76.

In an oral ruling, the trial court rejected Stallings's version of events with respect to his alleged backseat invocation of counsel. ECF No. 27-15 at 4. The court concluded that Stallings "never told Officer Captain that he wanted an attorney or wanted to speak with an attorney." *Id.* The court accordingly that found Stallings's statements to police were admissible and denied the motion in limine.

Stallings's trial began in March 2016. ECF No. 27-8. The jury heard testimony from Bodo Gajevic ("Gajevic"), a narcotics special agent whose "involvement in th[e] case started" with a review of the case file. ECF No. 27-11 at 45–46, 50. On direct examination, the State mentioned the shotgun found in the search of the 19th Street Residence. *Id.* at 69. Gajevic discussed the shotgun's relevance to "the conclusion that th[e] amount of marijuana [found] [wa]s consistent with intent to distribute." *Id.* at 71–72. On cross examination, Stallings's trial counsel, Attorney Eric Hailstock ("Attorney Hailstock"), asked Gajevic if, from his review of the case file, anyone had

"see[n] [Petitioner] with a gun," to which Gajevic responded that he believed so. *Id.* at 83–84. To this, Attorney Hailstock asked "Who?" *Id*. at 84.

A sidebar was then held outside of the presence of the jury. The State "point[ed] out . . . a portion of the affidavit for the search warrant . . . that, in essence, talks about information that a [CI] gave law enforcement, and that the [CI] reported observing a firearm and . . . knew that [Stallings] was a convicted felon . . . ." *Id.* at 86–87. The State noted that it had already moved the affidavit in support of the warrant application into evidence earlier in the trial. *Id*. at 87; ECF No. 27-9 at 111 (trial transcript identifying search warrant as trial exhibit No. 44 and documenting that exhibit's receipt into evidence); ECF No. 27-11 at 87 (trial transcript confirming that affidavit in support of search warrant was included within trial exhibit No. 44). Neither party had moved to publish the warrant materials to the jury, however. ECF No. 27-9 at 111.

Upon inquiry by the court, Attorney Hailstock stated that his strategy for this line of questioning was to "obtain the name of the [CI] . . . [who] had asserted [Stallings] being in possession of the firearm." ECF No. 27-11 at 90–91. The Court asked Attorney Hailstock if he wished to proceed with that strategy, understanding that the State was asserting a privilege not to disclose the CI's identity and understanding that Gajevic would not be made to disclose the CI's identity. *Id.* at 91–92. Attorney Hailstock asserted that he wished to continue with the line of questioning, anticipating that Gajevic would answer the question generally with "confidential informant." *Id.* at 95. Attorney Hailstock informed the court that he wanted to delve into the CI's credibility and motivation for informing; for example, if he or she was addicted to drugs or being paid to be a CI. *Id.* at 96. The court again expressed concern with respect to this

strategy. *Id.* at 97 ("[W]hat is the strategic benefit [of] . . . evidence being presented to the jury, that the [CI] reported that [Petitioner] was the individual in possession of the firearm at the residence?"); *id.* at 100 ("I still have some concern [because] [s]o far the State has not presented a [CI], a witness . . . . [T]he State has not presented any evidence that anyone, including a [CI], claimed to have seen [Petitioner] in possession of a firearm or that the [CI] claimed that [Petitioner] was the individual in possession of a firearm at the residence . . . ."). The court then stood in recess until the following morning.

The following morning, before the jury had been reconvened, Attorney Hailstock informed the court that he no longer wished to pursue that line of questioning and successfully moved for the line of questioning—"Q: And to your knowledge did anyone see him with a gun . . . ? A: I believe so. Q: . . . Who?"—to be stricken from the record. ECF No. 27-12 at 4–8. Upon reconvening the jury, the court instructed the jury to entirely disregard that portion of cross examination. *Id.* at 13–15.

At the conclusion of trial, the jury found Stallings guilty of all three offenses charged. *Stallings*, 2021 WL 8534196, at *1. The trial court sentenced him to a total of thirteen years in state prison. *Id.*

### 2.2.2   Post-Conviction Stage

In June 2018, Stallings's appellate counsel filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Wis. Stat. § 809.32 and moved to withdraw. The no-merit report addressed whether Stallings's due process rights under *Brady* were violated by the State's failure to retain and turn over Captain's squad audio recording which, according to Stallings's testimony at the motion in limine hearing, captured Stallings's

invocation of his right to an attorney. Stallings's appellate counsel concluded that this argument lacked merit.

On April 13, 2021, the Wisconsin Court of Appeals concluded that Stallings's case presented no issues of arguable merit and affirmed the judgment below. With respect to Ground Four, the trial court had concluded as a factual matter that Stallings never invoked his right to counsel in Captain's squad car. *Stallings*, 2021 WL 8534196, at *4. In other words, the trial court did not believe Stallings's version of events with respect to his alleged invocation of counsel. The Wisconsin Court of Appeals concluded that that factual finding was not clearly erroneous. *Id.* Moreover, it concluded that the factual finding was fatal to Ground Four because "if Stallings did not invoke the right to counsel, then any recording from Captain's squad was, at best, potentially useful or potentially exculpatory evidence, not apparently exculpatory evidence." *Id.* "This means that Stallings had to show the police acted in bad faith when they destroyed the recording, but the only evidence of record is that the tape was destroyed in accordance with a routine department policy." *Id.* (citing *State v. Weissinger*, 851 N.W.2d 780, ¶ 13 n.4 (Wis. Ct. App. 2014)).

With respect to Ground Seven, the Wisconsin Court of Appeals recounted that "the entirety of the search warrant and the affidavit had been introduced as an exhibit" during trial. *Id.* at *9. The Wisconsin Court of Appeals disagreed with Stallings, however, that his Sixth Amendment confrontation right was implicated because "the confrontation clause applies only to testimonial hearsay statements and is not implicated if the statements are nontestimonial or not hearsay." *Id.* (citing *State v. Nieves*, 897 N.W.2d 363, ¶¶ 29, 36 (Wis. 2017) and *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)). "Here," the court wrote, "the [CI's] statements were not

hearsay because they were not offered for the truth of the matter—that is, they were not offered to prove that Stallings was a felon, or that he possessed a short barreled shotgun, or that he had possessed marijuana." *Id.* (citation omitted). Instead, "[t]he warrant materials were introduced only as proof [that] police had entered the residence pursuant to a warrant." *Id.* (also noting that "[t]he State did not expressly reference the [CI's] statements within the affidavit, and the warrant materials were not published to the jury").

In May 2021, Stallings filed a Petition for Review of the appellate court's decision with the Wisconsin Supreme Court. *See* Wisconsin Court of Appeals Case No. 2018AP000982, available at https://wscca.wicourts.gov (last visited Mar. 25, 2024). The Wisconsin Supreme Court denied the Petition for Review without opinion in August 2021. *State v. Stallings*, No. 2018AP982-CRNM, 2021 WL 9772169 (Table) (Wis. August 11, 2021).

Petitioner is now incarcerated at Redgranite Correctional Institution under Warden Michael Gierach.[4] His maximum discharge date is May 10, 2045, with an extended supervision commencement date of August 23, 2030. Offender Locator, https://appsdoc.wi.gov/lop/details/detail (last visited Mar. 25, 2024).

## 3. STANDARD OF REVIEW ON HABEAS

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the

[4]Warden Michael Gierach is accordingly the appropriate Respondent in this action. The Court will instruct the Clerk of Court to replace Dan Cromwell with Michael Gierach as Respondent in this action. *See* Rule 2(a) of the Rules Governing 2254 Cases.

Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141 (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) and *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington*, 562 U.S. at 101; *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely

wrong; even "clear error" will not suffice.'") (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.") (citing *Wright v. Wrest*, 505 U.S. 277, 308–09 (1992) (Kennedy, J., concurring)).

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, as amended by AEDPA, § 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 17 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question de novo. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

A federal court also reviews a claim de novo where the state courts failed to "reach the merits" of the federal constitutional claim entirely. *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Instead, the claim is reviewed *de novo*.") (citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) and *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

## 4.    LAW & ANALYSIS

### 4.1    Ground Four

As noted, Petitioner alleges in Ground Four that the State failed to retain and/or turn over to the defense potentially exculpatory evidence in violation of *Brady* and Petitioner's Fourteenth Amendment due process rights. Petitioner specifically asserts that the State failed to turn over the recording from Captain's squad car, which he argues would have proved that he made a request for counsel after being detained, which he claims would have rendered his later inculpatory statements inadmissible. ECF No. 7 at 5 (citing ECF No. 1 at 14–17); ECF No. 27 at 3 ("Petitioner argued that his rights under *Brady* . . . were violated when he failed to receive in discovery a copy of a video of statements he made while in a squad car that had been destroyed after 120 days as a matter of course."). For the reasons discussed herein, the Court will deny Ground Four.

As recounted above, the trial court made the factual finding that Stallings never invoked his right to counsel in Captain's squad car, and the Wisconsin Court of Appeals affirmed, concluding that this factual finding was not clearly erroneous. Respondent contends that the Wisconsin Court of Appeals' rejection of this claim neither ran contrary to clearly established Supreme Court precedent nor was based on any unreasonable determination of the facts then before the court. ECF No. 27 at 4. The Court agrees.

Petitioner merely continues to argue that the squad car recording would have proved that he requested counsel. ECF No. 29 at 5. In other words, he seems to challenge the trial court's factual finding that he did not in fact invoke his right to counsel in Captain's squad car and the Wisconsin Court of Appeals' conclusion that that factual finding was not clearly

erroneous. But he makes little in the way of actual argument as to why this Court should accept that challenge; he simply, and baldly, reiterates his version of events, which version the state courts declined to accept.

As noted *supra* Section 3, for purposes of federal habeas review, "[t]he state court's factual determinations are cloaked with a presumption of correctness, and the presumption can be overcome only by clear and convincing evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (citing 28 U.S.C. § 2254(e(1)). The reviewing court must therefore be "objectively convinced that the record before the state court does not support the state court's findings in question." *Id.* (quoting *Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1048 (7th Cir. 2005) and citing *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003) and *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). This presumption of correctness also extends to the state court's credibility determinations. *Coleman v. Hardy*, 628 F.3d 314, 320 (7th Cir. 2010) (citing § 2254(e)(1) and *Araujo v. Chandler*, 435 F.3d 678, 682 (7th Cir. 2005)). "Credibility determinations made in the trial court are notoriously difficult to overturn under § 2254(d)(2)." *Coleman v. Hardy*, 690 F.3d 811, 817 (7th Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 341–42 (2006) and *Morgan v. Hardy*, 662 F.3d 790, 799 (7th Cir. 2011)).

Petitioner has not met his burden of rebutting the state courts' factual finding with clear and convincing evidence. He disagrees with the trial court's rejection of his version of events and with the Wisconsin Court of Appeals' affirmance of that rejection, but he gives the Court little to no reason to conclude that the state courts' factual determinations are unsupported by the state court record. He challenges Captain's credibility, pointing out that she was "somehow [able] to remember what the other detectives told her, but cannot remember if" Stallings told her that he

wanted an attorney. ECF No. 11 at 5–6. But this attack on Captain's credibility is not enough for this Court to reject the state court's factual determination. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (federal courts on habeas review have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

Nor can the Court conclude that the Wisconsin Court of Appeals, in affirming the trial court's rejection of Petitioner's *Brady* challenge, ran contrary to or unreasonably applied clearly established Supreme Court precedent. "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006) (citing *Brady*, 373 U.S. at 87). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id*. at 870 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)).

However, "[t]here is a difference 'between those situations in which the police fail to disclose to the defendant evidence that it knows to be material and exculpatory, and those situations in which police simply fail to preserve *potentially* exculpatory evidence.'" *U.S. v. Kimoto*, 588 F.3d 464, 474 (7th Cir. 2009) (quoting *United States v. Chaparro-Alcantara*, 226 F.3d 616, 623 (7th Cir. 2000)) (emphasis added). "[T]he good or bad faith of the State [is] irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *United States v. Holly*, 940 F.3d 995, 1001 (7th Cir. 2019) ("*Brady* requires that the government disclose evidence materially favorable to the defendant 'irrespective of the good faith or bad faith of the prosecution.'") (quoting *Brady*, 373 U.S. at 87). But "the police's failure to preserve *potentially* useful

evidence does not constitute a denial of due process unless the defendant can show that the police acted in bad faith." *Holly*, 940 F.3d at 1001 (citing *Arizona*, 488 U.S. at 58) (emphasis added). Under *Arizona*, with respect to merely potentially exculpatory evidence, the defendant must show "proof of animus or a conscious effort to suppress exculpatory evidence" that the "official[] . . . subjective[ly] k[new] . . . had exculpatory value." *Id.* (citing *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019)).

The Wisconsin Court of Appeals confirmed that the squad audio recording "was, at best, potentially useful or potentially exculpatory evidence" governed by *Arizona*, as opposed to "apparently exculpatory evidence" governed by *Brady*, because the trial court had found that Stallings never actually invoked his right to counsel in the squad car, which finding was not clearly erroneous. *Stallings*, 2021 WL 8534196, at *3–4. That conclusion was not legally erroneous. *See Holly*, 940 F.3d at 1002 (lost video was not shown to have apparent material exculpatory value—*i.e.*, claim was governed by *Arizona* as opposed to *Brady*—because trial court found that the video would not show what the defendant claimed it would show, which factual finding was not clearly erroneous); *United States v. Bender*, __ F.4th __, 2024 WL 981438, at *3 (7th Cir. 2024) (failure to disclose squad camera footage governed by *Arizona*, not *Brady*, as merely potentially exculpatory because the parties "can only guess about what [the] dash camera captured").[5]

---

[5]It is true that circuit, rather than Supreme Court, precedent does not in and of itself constitute "clearly established" federal law for purposes of habeas review, but it nevertheless may help guide the inquiry. *See Lewis v. Zatecky*, 993 F.3d 994, 1000 (7th Cir. 2021) ("For purposes of section 2254(d), the only relevant law is that which is 'clearly established Federal law, as determined by the Supreme Court of the United States[.]' . . . . Our own decisions, as well as those of other

Moreover, the Wisconsin Court of Appeals affirmed the trial court's rejection of Petitioner's purported *Brady* claim on the ground that Stallings failed to show that "the police acted in bad faith when they destroyed the recording" because "the only evidence of record [wa]s that the tape was destroyed in accordance with routine department policy." *Stallings*, 2021 WL 8534196, at *4. This conclusion, too, tracks with governing federal precedent. *See Illinois v. Fisher*, 540 U.S. 544, 546 (2004) (no *Arizona* violation where "police, acting in accord with established procedures, had destroyed" the evidence); *U.S. v. Stallworth*, 656 F.3d 721, 731 (7th Cir. 2011) (affirming rejection of purported *Brady* claim because the defendant "presented no evidence of bad faith on the part of the government" and the police department "may have deleted the recording as a routine part of video record maintenance"); *United States v. Bell*, 819 F.3d 310, 318 (7th Cir. 2016) (no *Arizona* violation when witness testified that video was taped over as a matter of routine).[6]

For all these reasons, the Court concludes that Petitioner has not met his burden of demonstrating that the Wisconsin Court of Appeals, in affirming the rejection of his *Brady* claim, ran contrary to or unreasonably applied clearly established Supreme Court precedent, or that it based its

---

circuits or state courts, are informative only insofar as they may shed light on our understanding of the authoritative Supreme Court precedents.").

[6]Petitioner argues that Captain "said under oath that she made a copy of" the recording from when Petitioner was in the backseat of her squad car. ECF No. 31 at 2 ("She made a copy of the . . . recording. So what happen[e]d to it?"). This appears to be a misinterpretation of Captain's testimony. She testified that her squad car automatically began a recording when someone was in the back, and that any such recording was automatically, and temporarily, stored electronically. She did not testify that she herself made any copy of that recording.

decision on any unreasonable determination of the facts. Accordingly, the Court will deny Ground Four on its merits.

### 4.2 Ground Seven

In Ground Seven, Petitioner asserts that the admission of the no-knock search warrant application and supporting affidavit into evidence at trial violated his rights under the Confrontation Clause. Petitioner argues that this "allowed the jury to read verbatim what the [CI] told the detective" in violation of his "right to confront his accuser." ECF No. 29 at 8 ("The [CI] made accusations against [P]etitioner that w[ere] use[d] at trial. I have a right to cross examine him."); *id.* at 9 ("[T]he [CI] state[d] that he observed a firearm belonging to an individual known as 'TY'.").

Respondent first argues that the Court should reject Ground Seven because "[t]he alleged error was invited by" Stallings's own trial counsel. ECF No. 30 at 18. This argument refers, as discussed *supra* Section 2.2.1, to Attorney Hailstock's line of questioning on cross examination seeking to delve into the credibility of the CI. But Attorney Hailstock later abandoned the line of questioning, after which point the court struck that portion of the examination from the record and ordered the jury to disregard it. Neither the existence of the CI nor any of the CI's statements were, therefore, disclosed through that line of questioning, which in any event was stricken from the record. The Court cannot, therefore, conclude that any "error was invited by" Stallings's own counsel. ECF No. 30 at 18. Even if the Court were to conclude otherwise, however, it is not clear that it would matter; "the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admission of hearsay statements. Thus, the mere fact that [a defendant] may have opened the door to the testimonial, out-of-court statement that violated his

confrontation right is not sufficient to erase that violation." *United States v. Cromer*, 389 F.3d 662, 679 (6th Cir. 2004).[7]

Stallings more so takes issue with the earlier admission into evidence of the search warrant application and supporting affidavit, which affidavit included the CI's statement that he or she saw a firearm belonging to an individual named "TY" in the 19th Street Residence. ECF No. 29 at 8; ECF No. 31 at 4 ("So before Agent Gajevic took the witness stand[,] the State had already enter[ed] the [CI's] statement" into evidence . . . ."). Indeed, it was the State that moved that exhibit into evidence, not Stallings's own counsel. ECF No. 27-9 at 111.

Respondent also emphasizes, as the Wisconsin Court of Appeals acknowledged, that while the warrant materials were admitted into evidence, they were not published to the jury. ECF No. 30 at 21 & n.9; *Stallings*, 2021 WL 8534196, at *9. Neither the Wisconsin Court of Appeals nor Respondent, however, cites to any authority for the significance of that context. Respondent does not suggest, for example, that the jury was unable to consider the warrant materials during deliberations due to their having been admitted into evidence but not published. He does not suggest, or cite to any authority suggesting, that evidence cannot run afoul of the Confrontation Clause if it is admitted into evidence but not published to the jury during trial. To the contrary, it seems that whether the allegedly violative evidence was published to the jury, in addition to being admitted into evidence, is of no consequence in determining whether a Confrontation

---

[7]Respondent's citations to the contrary do not actually involve the Confrontation Clause, and so are of tenuous, if any, application to this case. ECF No. 30 at 18 (citing *U.S. v. Muskovsky*, 863 F.2d 1319, 1329 (7th Cir. 1988) and *State v. Gary M.B.*, 676 N.W.2d 475, ¶ 11 (Wis. 2004)).

Clause violation occurred. *See United States v. Dunbar*, 104 F. App'x 638, 639 (9th Cir. 2004) (no Confrontation Clause violation where "no testimonial evidence provided by the confidential informant was ever *introduced into evidence*") (emphasis added); *Hicks v. United States*, No. C05-1629 JCC (CR02-375C), 2006 U.S. Dist. LEXIS 101559, at *6 (W.D. Wash. Aug. 3, 2006) (no Confrontation Clause violation where "the Government neither examined [the witness] *nor used his affidavit as an exhibit at trial*") (emphasis added).[8]

Respondent also notes that Stallings never objected at trial to the introduction of the warrant materials into evidence, but Respondent again fails to elaborate as to what significance he attributes to that fact. ECF No. 30 at 21. At least for procedural default purposes, Stallings's failure to object to the admission of the warrant materials into evidence is immaterial because the Wisconsin Court of Appeals made no note of Stallings's failure to object and considered the Confrontation Clause claim on its merits. *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021) (quoting *Richardson v. Lemke*, 745 F.3d 258, 269 (7th Cir. 2015)).

In any event, the Court cannot conclude that the Wisconsin Court of Appeals' disposition of this claim was "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada*, 569 U.S. at 508–09 (quoting *Harrington*, 562 U.S. at 102).

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be

---

[8]It may, however, be relevant to determining whether any such Confrontation Clause violation was ultimately harmless. *See infra* Section 4.2.

confronted with the witnesses against him.'" *United States v. Lynn*, 851 F.3d 786, 792 (7th Cir. 2017) (quoting U.S. CONST. AMEND. VI). As the Wisconsin Court of Appeals correctly noted in affirming the rejection of Petitioner's Confrontation Clause claim, however, "[t]his Clause guarantees . . . only a defendant's right to those who 'bear testimony' against him." *Id*. (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)); *Stallings*, 2021 U.S. 8534196, at *9 (citing *Crawford*, 541 U.S. at 59 n.9). "Nontestimonial evidence is not protected by the Clause." *Id.* (citing *Crawford*, 541 U.S. at 56, 68).

Importantly, the admission into evidence of statements not introduced for the truth of the matter asserted do not implicate the Confrontation Clause. *Tennessee v. Street*, 471 U.S. 409, 413 (1985); *Crawford*, 541 U.S. at 59 n.9 ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") (citing *Tennessee*, 471 U.S. at 414). "*Crawford* . . . only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted.'" *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) (quoting Fed. R. Evid. 801). The admission of non-hearsay statements at trial "does not offend the Confrontation Clause because the declarant is not a witness against the accused." *Id*. (citing *Crawford*, 541 U.S. at 51, 59–60, & n.9 and collecting cases).

It is true that introduction into evidence at trial of statements given by confidential informants can in some instances run afoul of the Confrontation Clause. *United States v. Diggs*, No. 18 CR 185-1, -3, 2022 U.S. Dist. LEXIS 36598, at *46 (N.D. Ill. Mar. 2, 2022) (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006) and *United States v. Adams*, 628 F.3d 407, 416 (7th Cir. 2010)); *Adams*, 628 F.3d at 416 ("Our cases recognize there is a particular potential for abuse when police officers testify to out-of-court statements by

confidential informants.") (citing *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004)). But again, that is only so if those statements are offered into evidence for the truth of the matter asserted. *Adams*, 628 F.3d at 417 ("The CI's statement was offered for its truth—that [the defendant] possessed crack on his person . . . . The district court erred by allowing its admission . . . .").

The Wisconsin Court of Appeals determined in this case that "[t]he warrant materials were introduced [into evidence at trial by the State] only as proof [that] police had entered the residence pursuant to a warrant," and that they were therefore non-hearsay and did not run afoul of the Confrontation Clause. *Stallings*, 2021 WL 8534196, at *9; ECF No. 27-9 at 111. Giving the state court decision "the benefit of the doubt," as the Court must, the Court concludes that the Wisconsin Court of Appeals' determination neither ran contrary to or unreasonably applied governing Supreme Court precedent, nor was it based on an unreasonable factual determination. *Woodford*, 537 U.S. at 24; *Hartjes*, 456 F.3d at 792.

*United States v. Holmes*, 620 F.3d 836 (8th Cir. 2010) is illustrative for purposes of contrast. There, the prosecution instructed a testifying officer to read from the affidavit the officer had prepared in support of an application for a warrant to search the defendant's residence. *Holmes*, 620 F.3d at 840. The officer read several paragraphs of the affidavit into the record, including that a "CI informed [him] that there [wa]s a black male . . . distributing crack cocaine and cocaine from his residence . . . and [wa]s in possession of a handgun" and that the CI confirmed that male as being the defendant. *Id.*

The Eighth Circuit—importantly, on direct appeal, rather than habeas review—concluded that the "statements made by the CI to" the

officer "that led to [the officer's] further investigation of" the defendant "clearly fall within the class of statements considered testimonial." *Id.* at 841 (citing *United States v. Lopez-Medina*, 596 F.3d 716, 730 (10th Cir. 2010)). The Eighth Circuit rejected the prosecution's attempt to argue that the Confrontation Clause was not implicated because the officer's "statements concerning what the CI told him are not hearsay because they were offered to . . . establish the propriety of the investigation, not for the truth of the CI said." *Id.* The court acknowledged that "out-of-court statements are not hearsay if they are offered 'to explain the reasons for or propriety of a police investigation," but "only when the propriety of the investigation is at issue in the trial." *Id.* (quoting *United States v. Malik*, 345 F.3d 999, 1001–02 (8th Cir. 2003) and citing *United States v. Maher*, 454 F.3d 13, 22 (1st Cir. 2006)). That exception was not at play in *Holmes*, the court determined, because "the propriety of the investigation was never really at issue" and the defendant "did not challenge the validity of the search warrant." *Id.*

Similarly, in *Silva*,[9] the Seventh Circuit concluded that the defendant's right to confront the witnesses against him was violated when an agent testified at trial to conversations involving a non-testifying confidential informant. 380 F.3d at 1019. The agent there testified that the informant spoke about "this individual named Juan" who was going to be making a delivery of methamphetamine. *Id.* The lower court in that case overruled hearsay objections, concluding that the testimony was "not being offered for the truth of the matter." *Id.* "That's surprising," the Seventh Circuit wrote, "for the evidence directly inculpated [the defendant]" and it

[9]Again, circuit precedent does not in and of itself constitute "clearly established" federal law for purposes of habeas review, but it nevertheless may help guide the inquiry. *See supra* 5 (citing *Lewis*, 993 F.3d at 1000).

was not clear "to what issue other than the truth the testimony [might] have been relevant." *Id.* (citing Fed. R. Evid. 801(c)).

The Court is satisfied that the circumstances of the instant case are sufficiently materially distinguishable that the Wisconsin Court of Appeals cannot be said to have objectively unreasonably disposed of this ground or disposed of it in a manner contrary to clearly established federal precedent.

In this case, the specific statement of the CI with which Stallings takes issue—that the CI saw in the 19th Street Residence a firearm belonging to someone known as "TY"—was not introduced at Stallings's trial to prove that a firearm was, in fact, seen at the 19th Street Residence and attributable to Stallings. That statement was never testified to at all. None of the CI's statements in the affidavit were ever, themselves, even brought up at trial, let alone testified to. The fact that a CI was even involved in the investigation was never mentioned.

The warrant materials were instead introduced into evidence merely in support of the witness's statement that the search of the 19th Street Residence was authorized by a warrant obtained the day prior. ECF No. 27-9 at 111. As Respondent notes, ECF No. 30 at 21, the State later asked Gajevic on direct examination about a firearm being found in the 19th Street Residence, but neither party mentioned the fact that a CI had previously told law enforcement that he or she saw a firearm belonging to "TY"—*i.e.*, Petitioner—there. Indeed, the State did not need to do so—officers themselves found a firearm in their search of the 19th Street Residence (which firearm Petitioner later admitted at an interrogation to having purchased), so any reference back to the CI having seen a firearm there would have been unnecessary.

Unlike in *Holmes*, the propriety and validity of the search was, in fact, at issue in this case; Stallings had earlier moved to suppress the drugs and guns recovered pursuant to the search warrant, arguing that the warrant application and supporting affidavit did not support a finding of probable cause. *Stallings*, 2021 WL 8534196, at *2. Similarly, in contrast to *Silva*, where the court questioned "to what issue *other* than the truth the testimony [might] have been relevant," the context of the admission in this case makes clear that the warrant materials were relevant to demonstrating that the search of the 19th Street Residence was authorized. 380 F.3d at 1019; *see also Cromer,* 389 F.3d at 676 ("Even if testimonial statements of an out-of-court declarant were revealed . . . , [the defendant's] confrontation right was not implicated because the testimony was provided merely by way of background.") (citing *United States v. Martin*, 897 F.2d 1368, 1371–72 (6th Cir. 1990)); *but see Adams*, 628 F.3d at 418 (rejecting Government's contention that admission of testimonial statements did not violate Confrontation Clause because "they give context to the investigation," concluding that such an argument "would eviscerate the constitutional right to confront and cross-examine one's accusers'") (quoting *Silva*, 380 F.3d at 1020).

Even if the Court were to conclude otherwise, however, as Respondent asserts, the issue is nevertheless subject to harmless error review. ECF No. 30 at 25; *United States ex rel. Lee v. Flannigan,* 884 F.2d 945, 951 (7th Cir. 1989) ("[C]onfrontation clause violations are subject to a harmless error analysis, . . . and the harmless error standard applies in habeas review . . . .") (internal citations omitted) (citing *United States ex rel. Savory v. Lane*, 832 F.2d at 1016–17 (7th Cir. 1987)). "On habeas review, a constitutional error is considered harmless unless it can be shown to have

'had substantial and injurious effect or influence in determining the jury's verdict.'" *Jones v. Basinger*, 635 F.3d 1030, 1052 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) and citing *O'Neal v. McAninch*, 513 U.S. 432, 439 (1995)); *see also Rhodes v. Dittman*, 903 F.3d 646, 665 (7th Cir. 2018) (same) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007) and citing *Jensen v. Clements*, 800 F.3d 892, 902–03 (7th Cir. 2015)). "This requires 'more than a reasonable possibility that the error was harmful.'" *Rhodes*, 903 F.3d at 665 (internal quotation marks omitted) (quoting *Davis v. Ayala*, 576 U.S. 257, 268 (2015)).

In conducting harmless error review, courts "look to 'a host of factors,' such as 'the importance of the [allegedly violative evidence] in the prosecution's case, whether [that evidence] was cumulative, the presence or absence of evidence corroborating or contradicting [that allegedly violative evidence] . . . , and, of course, the overall strength of the prosecution's case.'" *Jones,* 635 F.3d at 1052 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Petitioner has not shown, and the Court cannot conclude, that the admission of the warrant materials into evidence—even if in violation of the Confrontation Clause—"had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht*, 507 U.S. at 622). First, even omitting the warrant materials from the equation—which may or may not have even been looked at by the jury—"there was plenty of other evidence which linked" Petitioner to the offenses charged, and the defense did little in the way of successful rebuttal. *Flannigan*, 884 F.2d at 951; *but see Rhodes,* 903 F.3d at 665 ("Harmless error 'is not the same as a review for whether there was sufficient evidence at trial to support a verdict.") (quoting *Jensen*, 800 F.3d at 902). Petitioner's own counsel, in his

opening statement, essentially conceded that things did not look good for Petitioner, at least with respect to the drug charges. ECF No. 27-9 at 92 ("You may find him guilty on the marijuana charge. I'm not going to sit up here and say you won't or you will. The evidence is what it is.").

The jury heard that (1) a search of the 19th Street Residence revealed marijuana in various forms and in various parts of the home (totaling nearly 190 grams and representing several thousand dollars' worth of product), ECF Nos. 27-9 at 102, 117, 27-10 at 44, and 27-11 at 60, 46; (2) mail and papers established that the 19th Street Residence was Petitioner's residence; and (3) a sawed-off shotgun and shells were found during a search of the 19th Street Residence, ECF No. 27-10 at 64, 67–69. It was also established at trial that several of the containers of marijuana discovered in the search bore Petitioner's fingerprints. ECF No. 27-11 at 20–21, 40. The jury also heard that, in an interrogation with police, Stallings confessed to having purchased the sawed-off shotgun, conceded that his fingerprints would be found on it, and confessed to selling marijuana. ECF No. 27-10 at 101, 104–06; ECF No. 27-12 at 24–25, 62–63. A witness also testified that Stallings said that his "retirement plan" was to rob a drug house with the sawed-off shotgun. ECF No. 27-13 at 43. Finally, a witness informed the jury that, based on his review of the case file and his experience, the amount and types of marijuana recovered, in conjunction with the presence of a firearm in the residence, was consistent with possession with intent to deliver. ECF No. 27-11 at 50, 53, 72.

More importantly, there is no indication that the admission of the warrant materials into evidence prejudiced Petitioner at all such that it could be deemed substantially injurious. *Jones*, 635 F.3d at 1053 (emphasizing the importance of analyzing the prejudicial effect of the

inclusion of the allegedly violative evidence at trial). As noted, the warrant materials were admitted into evidence solely in the context of establishing that the search of the 19th Street Residence was undertaken pursuant to a warrant. Introduction of the warrant materials into evidence ultimately bore little to no importance in the State's case; neither the State nor any of the State's witnesses discussed the materials as themselves going to Petitioner's guilt.[10] *Cf. Jensen*, 800 F.3d at 904–06 (letter admitted in violation of Confrontation Clause was clearly important to the state's case since "the State's end to its . . . closing argument focused on the letter," twelve witnesses testified to its contents, the state "displayed the . . . letter itself on the screen and asked the jury to read it," and "the State . . . repeatedly fought to get the letter admitted").

In contrast, it was not, in fact, until Petitioner himself mentioned the CI in his testimony that the jury ever became aware of the involvement of a CI, since the affidavit containing the CI's statements had not been published to the jury and had not, therefore, yet been made available to it. ECF No. 27-12 at 72–73; *see supra* note 8. And it was clear that the State had not expected the issue of the CI to even come up at trial. ECF No. 27-13 at 78 ("Only 22 months later when [Stallings] takes the witness stand do we hear this revelation . . . about this informant planting these guns."). This further demonstrates that the warrant materials and the CI's statements therein were not, and were not considered by the State to be, an important component of the State's case.

---

[10]The State, in its examination of Petitioner, referenced the warrant and its supporting affidavit, but only in the context of describing its total page length after Petitioner testified that he was confused by something in the warrant. ECF No. 27-13 at 18–19.

Finally, the CI's statement in the affidavit that he or she saw a firearm believed to be owned by Petitioner in the 19th Street Residence was cumulative of other evidence at trial—specifically, the discovery of the sawed-off shotgun, Petitioner's concession during interrogation that he purchased it and that his prints would be found on it, Petitioner's ability during the interrogation to describe the firearm in great detail, and a witness's testimony that Petitioner said he was going to rob a drug house with the sawed-off shotgun. For all these reasons, the Court is therefore satisfied that any alleged Confrontation Clause violation was in any event harmless. For all these reasons, the Court will deny Ground Seven on its merits.

**5. CONCLUSION**

As discussed above, both Grounds Four and Seven, Petitioner's sole remaining grounds for relief, will be denied. Accordingly, the Court is constrained to deny the corrected, amended petition in its entirety.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), a petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In light of the well-settled principles analyzed above, no reasonable jurists could debate whether the corrected,

amended petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Grounds Four and Seven of Petitioner's corrected, amended petition, ECF No. 11, be and the same are hereby **DENIED** on their merits;

**IT IS FURTHER ORDERED** that Petitioner's corrected, amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 11, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall replace Dan Cromwell with Michael Gierach as Respondent in this action;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of March, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.